2020 IL App (2d) 190740-U
No. 2-19-0740
Order filed August 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| MONICA CHIRILA, | ) | of Du Page County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 15-D-1214 |
| | ) | |
| CONSTANTIN CHIRILA, | ) | Honorable |
| | ) | Robert E. Douglas, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in granting summary judgment to Monica on Constantin's petition to modify maintenance, but it did err in granting her a directed finding on Constantin's petition to modify child support. Therefore, we affirm in part, reverse in part, and remand.

¶ 2    The marriage of respondent, Constantin Chirila, and petitioner, Monica Chirila, was dissolved on May 8, 2017. On direct appeal, we agreed with Constantin that the trial court erred in denying him maintenance, and on remand he was awarded maintenance. Constantin subsequently sought increased maintenance and an initial award of child support. The trial court granted summary judgment to Monica on Constantin's petition to increase maintenance, and it

granted a directed finding denying his petition to modify child support. Constantin challenges these rulings on appeal. We affirm in part, reverse in part, and remand the cause.

¶ 3                                   I. BACKGROUND

¶ 4                                   A. Initial Proceedings

¶ 5     The parties were married in 1991 and have two children:  E.C., born in February 2003, and N.C., born in December 2004. Monica filed a petition for dissolution of marriage on June 8, 2015. On May 23, 2016, the parties entered into a parenting agreement in which they agreed to equally split parenting time of the children.

¶ 6     A trial took place in early 2017. The parties made various stipulations, including regarding the parties' wages. Monica, who was a family practice physician with Du Page Medical Group, earned the following wages: 2012 ($247,385.68); 2013 ($253,514.42); 2014 ($260,553); 2015 ($206,044); and 2016 ($180,000). Constantin was a senior engineer at Exelon and earned the following wages: 2012 ($95,616.32); 2013 ($98,484.40); 2014 ($102,866); 2015 ($105,243); and 2016 ($117,000).

¶ 7     Monica testified that her base salary was $150,000, which she set each prior year based on an estimation of her own productivity, which included patient visits and various other factors. If she did not reach her estimated productivity, she would have to pay back the deficit. If she exceeded her estimated productivity, she had the option of taking out additional money or rolling it over to the next year. Monica received a one-time bonus of $500,000 in 2015.  After taxes were withheld by her employer, she received $329,500.

¶ 8     Monica acknowledged that her 2016 wages were lower than in previous years. She testified that she was working the same number of hours, but did "not know the exact answer" of why her wages were lower because there were "many factors that come into place [*sic*] and many other

aspects of medicine and reimbursement that changed."

¶ 9    The trial court issued a letter opinion on March 5, 2017, and stated as follows regarding their lifestyle and earnings. "[O]n balance the Parties were neither frugal nor extravagant. They led a comfortable above average lifestyle." The trial court averaged the stipulated salaries of the parties over the previous five years and found that Monica's average annual income was $230,000 and that Constantin's average annual income was $104,000. The parties were therefore over the threshold for statutory guideline maintenance. The trial court also considered that the parties' agreement required Monica to remain in the marital residence until the younger child emancipated. This required a mandatory annual expenditure on Monica's part of $78,000. After subtracting this amount, the parties had salaries of $152,000 and $104,000 respectively.

¶ 10   The trial court awarded maintenance from Monica to Constantin in the amount of $2,066 per month for 70 months, commencing March 15, 2017. "This provide[d] for an approximate equalization of the parties' gross income." Monica was to additionally pay 20% of any income she received over $230,000, up to $265,000, which was approximately the highest income she received during the marriage. Based upon the equal allocation of parenting time and expenses, and the trial court's consideration of the equalization of income through maintenance and other factors, it reserved the issue of child support for future consideration. The trial court entered the judgment for dissolution of marriage on May 8, 2017.

¶ 11   Monica filed a motion to reconsider, arguing that the trial court erred in averaging the parties' incomes. The trial court granted the motion on August 2, 2017, and ruled that both parties were barred from obtaining maintenance.

¶ 12   As relevant here, on appeal Constantin argued that the trial court erred in granting Monica's motion to reconsider. He also argued that the trial court erred in deducting the cost of maintaining

the former marital residence from Monica's income, and that it should have considered Monica's $500,000 bonus from 2015 as part of her income for maintenance purposes.

¶ 13    We agreed with Constantin's first two arguments. *In re Marriage of Chirila*, 2018 IL App (2d) 170389-U, ¶ 75. We held that the trial court should not have deviated from its initial income averaging, wherein it found that Monica's average annual income was $230,000, and that Constantin's average annual income was $104,000, and for which it determined that maintenance was warranted. *Id.* ¶ 52. We also held that the trial court erred in subtracting Monica's housing expenses from her income. *Id.* ¶ 55. We further concluded that the trial court did not err in excluding Monica's bonus from her 2015 income, because Constantin had stipulated to her wages for that year, and the trial court had the discretion to determine how to treat such non-recurring income. *Id.* ¶ 54.

¶ 14                                    B. Proceedings After Remand

¶ 15    Following remand, on March 21, 2019, the trial court awarded Constantin maintenance of $2,466.60 per month, retroactive to March 15, 2017. It stated that it did not deviate from the statutory guidelines because there was no evidence that Monica's living expenses would be less if she were not living in the marital home. The trial court further ordered that Monica pay 30% of any additional income she received over her five-year average salary of $230,004 per year, up to $300,000.

¶ 16    The next day, Constantin filed a petition to modify child support. He noted that the dissolution judgment reserved the issue of child support and that the parties had equal parenting time with the children. He alleged that the children were now ages 16 and 14 and that there was a substantial change in circumstances because Monica's income had nearly doubled, in that she earned $463,924.41 in 2017 and $432,193 in 2018. Constantin alleged that her five-year average

income was now $305,048.

¶ 17    On April 5, 2019, Constantin filed a petition to modify maintenance, and he filed an amended petition to modify maintenance on June 11, 2019. The amended petition was also based on Monica's increased income. He alleged that she further had income from two business entities, additional "K-1" income in 2017 and 2018, and matching and discretionary contributions from her employer to her 401(k) that were previously omitted in calculating her income. He alleged that her total 2017 income was $640,693 and that her total 2018 income would be over $700,000. Constantin also alleged that his stipulated income was incorrect.

¶ 18    In Monica's response to the petitions, she admitted that she earned the wages alleged by Constantin. On June 6, 2019, she filed a motion for summary judgment on Constantin's petition to modify maintenance. She argued that maintenance was designed to allow the recipient spouse to maintain the standard of living present during the marriage, that a party's increase in income was generally not sufficient to warrant an increase in maintenance, and that by setting a cap of $300,000 on Monica's income, the trial court had clearly considered that she would earn more than that amount. Monica thereafter filed a motion *in limine* to bar evidence of her income from 2012 to 2016 that was inconsistent with the court's previous findings.

¶ 19    A hearing on Constantin's petitions took place on August 1, 2019. The parties initially argued Monica's motion for summary judgment on Constantin's petition to modify maintenance. The trial court granted summary judgment for Monica, reasoning as follows. Constantin raised two arguments in his petition to modify maintenance, specifically that the trial court erred in using the five-year average incomes that it did, and that Monica's income had increased between 2017 and 2019. However, the trial court had used the parties' stipulated salaries, and the appellate court did not overturn its calculations, so the stipulated salaries constituted the law of the case. For the

second argument, Constantin's attorney argued at the hearing that Constantin was unable to maintain the same standard of living as he did during the marriage. That argument was not contained in the motion to modify. Further, when the trial court made its initial judgment, it had accounted for the parties' standard of living during their marriage. The average of their incomes during the five-year period at issue totaled $335,004. The trial court set a cap of $300,000 on Monica's income for maintenance purposes, thereby anticipating that she would continue to earn a higher salary. By setting her income at a cap of $300,000, and considering that Constantin continued to earn at least $104,004, the total income for maintenance purposes was $404,004, which was far beyond the standard of living the parties were enjoying at the time of the marriage. Accordingly, the trial court had already considered that Monica's income would increase when it awarded Constantin maintenance. It therefore granted Monica summary judgment.

¶ 20    The trial court next granted Monica's motion *in limine* on Constantin's petition to modify child support, stating that the stipulated incomes for 2012 to 2016 were the law of the case.

¶ 21    The following evidence regarding child support was then adduced from testimony and exhibits. Monica received a letter from her employer that she would have estimated taxable "K-1" income of $45,126.73 in 2018. She earned a bonus of $29,484 that year, and a "transaction bonus" of $257,160. Her employer also matched her 401(k) contributions to a certain extent. Monica's 2018 W-2 showed an income of $433,192.76.[1] In 2017, she earned a bonus of $46,608 and a "retention bonus" of $257,160. Her 2017 W-2 showed an income of $463,924.41. Her 2017 tax return showed an adjusted gross income of $640,693.

---

[1] In referring to W-2 income in this disposition, we reference the income shown in box 5 of the W-2 forms.

¶ 22    Constantin's 2018 W-2 showed an income of $128,688.81. Constantin's 2017 W-2 showed an income of $125,546.27, and his 2017 adjusted gross income was $165,617.

¶ 23    After Constantin rested, Monica moved for a directed finding. She argued that although Constantin had presented evidence of a change in circumstances through evidence of the parties' incomes, there were a number of other criteria that the trial court needed to consider in setting child support, such as the needs of the parties and the children. Monica argued that because the parties' incomes exceeded guideline amounts, the trial court would have to determine a reasonable amount of child support based on the evidence, but Constantin had presented no evidence from which the trial court could make this determination.

¶ 24    Constantin responded that in the dissolution judgment, the trial court considered the equalization of the parties' income in its award. Constantin continued that looking at Monica's 2017 and 2018 income, the parties' incomes were no longer equalized, representing a substantial change in circumstances. Constantin maintained that the significant increase in Monica's income was more than sufficient to justify awarding child support. Constantin argued that, according to caselaw, children were entitled to enjoy the same standard of living that they would have had if the marriage had not been dissolved. Constantin noted that the children were about 2½ years older than they were at the time of the dissolution judgment.

¶ 25    Constantin also argued that the trial court should increase Monica's contribution for the children's expenses, which were currently shared equally. Constantin asserted that Monica earned 78% of the parties' combined 2017 income and 72% of the parties' 2018 combined income, such that Monica should pay 78% of the children's expenses and Constantin would pay 22% of the expenses.

¶ 26    The trial court took a short recess to review the relevant statute and the cases presented by

the parties. When it returned, Constantin requested that he be allowed to reopen the proofs and provide testimony about how the children's needs had increased in the last two years and his inability to provide for them. The trial court denied the request, stating "[Y]ou rested. We are not reopening proofs at this point. I am ruling on the motion for directed verdict [*sic*]. You can do what you have to do after that."

¶ 27    On the merits, the trial court found as follows. Because the trial court had reserved the issue of child support at the time of the dissolution judgment, the hearing was a *de novo* assessment of child support under section 505. There had definitely been a substantial change in circumstances, in that Monica was earning about double of what she was at the time of the judgment. Pursuant to the statute, the trial court was to apply the child support guidelines unless it determined that the guideline amounts would be inappropriate after considering the children's best interests and evidence of relevant factors, which included the financial resources and needs of the children and parents, the standard of living that the children would have enjoyed if the marriage had not been dissolved, the children's physical and emotional condition, and the children's educational needs. There did not seem to be any dispute that the children were not currently suffering from any physical or emotional conditions. Constantin presented evidence of the parties' financial resources but not their needs. He also did not present evidence of the children's financial resources and needs, or the standard of living that they would have enjoyed if the marriage had not been dissolved. As such, the trial court did not receive sufficient evidence upon which to determine whether a duty of support existed, meaning that Constantin had not met his burden of proof. It therefore granted Monica's motion for a directed finding.

¶ 28    Constantin timely appealed.

¶ 29                                II. ANALYSIS

¶ 30                    A. Petition to Modify Maintenance

¶ 31    Constantin first argues that the trial court erred in granting summary judgment for Monica on his petition to modify maintenance. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). We review *de novo* a trial court's ruling on a motion for summary judgment. *Nichols v. Fahrenkamp*, 2019 IL 123990, ¶ 13.

¶ 32    Constantin cites section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/510(a-5) (West 2018)), which states that an order of maintenance may be modified or terminated only upon a showing of a substantial change in circumstances. Constantin asserts that Monica's income increased significantly, which can be described only as a substantial change. He notes that the trial court recognized during the child support hearing the same day that Monica was earning about double of what she was at the time of the dissolution judgment. Constantin asserts that Monica had additional "K-1" income, 401(k) income, and bonuses that were not reflected in the original dissolution judgment.

¶ 33    Constantin contends that once he established the "leap" in Monica's income, the case should have gone to an evidentiary hearing so that the trial court could hear evidence and assess all relevant statutory maintenance factors. Constantin argues that the trial court did not follow the two-step approach explained in *In re Marriage of Anderson*, 409 Ill. App. 3d 191 (2011). There, the court stated, "Courts in Illinois have held that 'substantial change in circumstances' as required under section 510 of the Act means that either the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance has changed." *Id.* at 198. *Anderson* later

stated that once a party has shown a substantial change in circumstances, the trial court has the discretion to modify maintenance, considering the same factors considered in setting the initial maintenance award. *Id.* at 203-204. Constantin argues that the trial court should have allowed an evidentiary hearing to establish his right to maintenance.

¶ 34    Monica argues that the only allegations in Constantin's petition to modify maintenance were that the parties' stipulated incomes were incorrect and that Monica's income had increased. Monica argues that *res judicata* and the law of the case doctrine prevented Constantin from contesting the stipulated incomes from the underlying trial. She further argues that in response to Constantin's petition, she acknowledged that she earned more in 2017 and 2018 than her five-year average as previously determined by the trial court. Monica asserts that, therefore, the only question was whether the pleadings demonstrated that there was no genuine issue of material fact and that she was entitled to judgment as a matter of law.

¶ 35    Monica argues that Constantin was not entitled to an evidentiary hearing despite her increased income, because the trial court had already contemplated that her income might increase in the future when it set the underlying cap on her income for purposes of maintenance payments. She highlights that the cap exceeded her five-year average income just prior to trial. Monica cites a series of cases for the proposition that when certain circumstances that arise in the future are contemplated, anticipated, and factored into the underlying judgment, those future circumstances coming to fruition cannot alone form the basis of a maintenance modification. See *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 18 (husband's retirement did not warrant termination of maintenance because it was contemplated when wife was awarded permanent maintenance); *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶¶ 29-30, 33 (trial court did not abuse its discretion in denying petition to modify maintenance because the spouse's retirement was anticipated when

the trial court initially awarded maintenance); *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1005 (2008) ("we are reluctant to find a 'substantial change in circumstances' where the trial court contemplated and expected the financial change at issue"). Monica argues that the reason the trial court anticipated that she might earn a higher income and capped the maintenance award was because maintenance is intended to allow the recipient to maintain the standard of living enjoyed during the marriage, and not after. See *In re Marriage of Micheli*, 2014 IL App (2d) 121245, ¶ 24. Monica maintains that the trial court analyzed the parties' standard of living at the time of the judgment and ordered an appropriate cap to allow Constantin to maintain that lifestyle, notably increasing that cap on remand from this court. Monica asserts that Constantin cannot now use an increase in her income and lifestyle, alone, to obtain more maintenance from her.

¶ 36    Monica alternatively argues that, even when not previously contemplated, a spouse's increased income alone does not constitute a substantial change in circumstances sufficient to allow modification of maintenance. See *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 44; *In re Marriage of Lasota*, 125 Ill. App. 3d 37, 42 (1984). Monica argues that her higher income has no bearing on Constantin's circumstances or their prior marital lifestyle, so it cannot form the only basis for a maintenance modification. Monica contends that Constantin did not allege in his pleadings any changes in his circumstances suggesting that he is no longer able to meet the marital lifestyle based on his income and the maintenance awarded by the trial court.

¶ 37    Constantin argues that the cases Monica cites are distinguishable because they involved maintenance rulings after full hearings. He cites section 2-612(b) of the Code of Civil Procedure (735 ILCS 5/2-612(b) (West 2018)), which states: "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Constantin argues that if Monica's argument, that pleading

an increase in income is not sufficient because the marital standard of living is a fixed amount of maintenance as a matter of law, then no maintenance order could ever be increased. Constantin asserts that the statute requires only a substantial change of circumstances, as opposed to a change of circumstances not contemplated by the parties or the court. Constantin continues that many of life changes are at least contemplated in some fashion, such as children going to college and becoming emancipated, and the parties receiving increased salaries and eventually retiring.

¶ 38    We disagree with Constantin that section 2-612 is applicable here, as Monica did not contest the sufficiency of the pleadings through a motion to dismiss. Rather, she moved for summary judgment. To the extent that Constantin argues that summary judgment is never appropriate for petitions to modify maintenance, we disagree. See *In re Marriage of Pedersen*, 237 Ill. App. 3d 952, 957 (1992) ("A trial court may eliminate meritless petitions to modify from its docket by the same procedures used in other cases, such as motions to dismiss and motions for summary judgment.").

¶ 39    We further conclude that the trial court did not err in granting summary judgment for Monica. As stated, summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). Thus, we are circumscribed by the allegations in Constantin's petition to modify maintenance. See also *American Standard Insurance Co. v. Basbagill,* 333 Ill.App.3d 11, 15 (2002) ("A party must recover, if at all, according to the case he has made for himself by his pleadings. [Citation.] Proof without pleadings is as defective as pleadings without proof.").

¶ 40    Constantin alleged in his petition that his stipulated income was incorrect and that Monica's income had substantially increased. Regarding the former allegation, Constantin cannot now retract his stipulation regarding the parties' incomes, as we discussed in the prior appeal. See *In re Marriage of Chirila*, 2018 IL App (2d) 170389-U, ¶ 54 (citing *In re Commitment of Walker*, 2014 IL App (2d) 130372, ¶ 36 (stipulations will be enforced unless unreasonable, procured by fraud, or violative of public policy)). Additionally, because we held that the trial court should have used its initial income averaging of the parties' income, those income numbers constitute the law of the case for the relevant time period. See *In re Marriage of Carstens*, 2018 IL App (2d) 170183, ¶ 23 (under the law of the case doctrine, questions decided in a prior appeal are binding on the trial court on remand and on the appellate court in subsequent appeals).

¶ 41    As for the latter allegation, Monica did not dispute that her income had increased. We agree with Monica that this change did not entitle Constantin to an evidentiary hearing, because the trial court had already accounted for her potential increase in income when it set the underlying cap on her income for purposes of maintenance payments. As Monica points out, *In re Marriage of Bernay*, 2017 IL App (2d) 160583, is relevant to this analysis. There, the trial court terminated the wife's permanent maintenance largely based on the husband's upcoming retirement. *Id.* ¶ 18. This court reversed, stating that the parties were already in their mid-50s when the maintenance was awarded such that the husband retirement was "clearly contemplated when permanent maintenance was ordered." *Id.* We stated: "It is axiomatic that, to warrant termination, the 'change' must not have been contemplated when permanent maintenance was ordered." *Id.*

¶ 42    We recognize *In re Marriage of Bernay* involved the termination of maintenance, whereas this case involves the modification of maintenance. However, section 510(a-5) Marriage Act states that "an order for maintenance may be *modified or terminated* only upon a showing of a substantial

- 13 -

change in circumstances" (emphasis added) (750 ILCS 5/510(a-5) (West 2018)), which shows that the type of analysis is very similar for both modification and termination. The same concept has also been applied in child support cases. See *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 24; *In re Marriage of Hughes*, 322 Ill. App. 3d 815, 818-19 (2001).

¶ 43    Here, upon remand from the prior appeal, the trial court awarded Constantin maintenance of $2,466.60 per month based on Monica's five-year average salary of $230,004 and Constantin's five-year average salary of $104,000. It also ordered Monica to pay 30% of any additional income she received over her five-year average salary, up to $300,000. To put the salary cap in perspective, we note that Monica's highest wage during the five-year period was $260,553 (see *supra* ¶ 6). Thus, the trial court allowed Constantin to share in a significant portion of Monica's potential increased income, up to $300,000, through additional maintenance. At the hearing on Monica's motion for summary judgment, the trial court specifically stated that it had taken into account the parties' standard of living during their marriage; that the average of the parties' incomes during the five-year period totaled $335,004; and that Monica would continue to earn a higher salary, as shown by its cap of $300,000 on Monica's income for maintenance purposes. It pointed out that when the cap was applied, the parties' total income was much higher than the standard of living that the parties enjoyed when they were married.

¶ 44    Constantin's petition to modify maintenance essentially relied exclusively on Monica's increased income. Given that the trial court was clearly contemplating that Monica's income would increase when it initially awarded maintenance, and that it accounted for an increased income up to $300,000 after considering the parties' standard of living when they were married, the trial court did not err in granting Monica's motion for summary judgment.

¶ 45                            B. Petition to Modify Child Support

¶ 46    Constantin next argues that the trial court erred in granting Monica a directed finding on his petition for child support. Section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2018)) permits a defendant to move for a directed finding in a bench trial at the close of the plaintiff's case. *Indeck Energy Services, Inc. v. DePodesta*, 2019 IL App (2d) 190043, ¶ 57. In ruling on a section 2-1110 motion, the trial court must first determine whether the plaintiff has established a *prima facie* case as a matter of law by providing evidence on every element essential to the plaintiff's underlying cause of action. *Id.* If the plaintiff fails to meet this burden, the trial court should grant the motion and enter judgment in the defendant's favor. *Id.* If the plaintiff has presented a *prima facie* case, the court must then consider the credibility of witnesses, draw reasonable inferences, and generally consider the weight and quality of the evidence. *Id.* If the court then concludes that sufficient evidence still exists to establish a *prima facie* case, the defendant's motion should be denied. *Id.* at 276. If the evidence is no longer sufficient, the court should grant the motion and enter judgment for the defendant. *Id.* ¶ 44    If the trial court grants the motion in the first step of the analysis, our review is *de novo*, whereas we apply a manifest-weight-of-the-evidence standard if the trial court grants the motion in the second step. *Id.* Here, the trial court stated that Constantin had not met his burden of proof

because there was not sufficient evidence for it to determine whether a duty of support existed. Accordingly, the trial court essentially ruled that Constantin has failed to present a *prima facie* case, which means our review of its ruling is *de novo*.

¶ 47    Constantin recognizes that under *In re Marriage of Petersen*, 2011 IL 110984, ¶ 18, his request for child support constituted a modification of the dissolution judgment that required him to show a substantial change in circumstances, even though the issue of child support had been

reserved.[2] He argues that, however, Monica's increased income alone justified a denial of her motion for a directed finding, such that evidence of the children's increased needs did not have to be elicited as a matter of law. He cites *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 29, where the court stated that "a substantial change in circumstances justifying a modification increasing child support may be based solely upon an increase in the supporting parent's ability to pay."

¶ 48    Constantin argues that even if an increase in the children's needs was required, it was shown by the passage of time. He cites *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 731 (1996), where the court stated: "An increase in the child's needs can be presumed on the basis that the child has grown older and the cost of living has risen. [Citation.] After the threshold question of whether a substantial change in circumstances has occurred is answered, then and only then may the court determine the amount of the increase in child support." Constantin also cites *In re Marriage of Boyden*, 164 Ill. App. 3d 385, 387 (1987), in which the court stated: "If a former spouse's increased ability to pay is shown, the fact that the child receiving support has grown older and the cost of living has risen are proper bases for establishing increased need. [Citation.] Modification is required where there is a substantial imbalance between the supporting parent's capabilities and the child's needs." The court further stated that the child support awarded may exceed the known needs of the child. *Id.* at 388. Constantin additionally cites a case stating that

_____

[2] Constantin cites *In re Marriage of McGrath*, 2012 IL 112792, as a case where a substantial change in circumstances was not required even though the question of child support had been reserved. However, *McGrath* did not address the issue and did not overrule *Petersen*.

supporting one's child is the most important obligation. See *In re Marriage of Verhines & Hickey*, 2018 IL App 2d 171034, ¶ 90.

¶ 49    Constantin alternatively argues that even if the trial court was correct that he needed to show more than an increase in Monica's income, the trial court erred in denying his request to reopen proofs and remedy the problem. He argues that there was no harm or prejudice to Monica because they were in the midst of a hearing. See *In re Marriage of Suarez*, 148 Ill. App. 3d 849, 858 (1986) ("greater liberty should be allowed in the matter of opening the proofs when the case is tried before the court without a jury").

¶ 50    Last, Constantin argues that even if we determine that his counsel was to blame, the trial court's order punishes only the children. He cited *In re Marriage of Danko*, 230 Ill. App. 3d 572, 576 (1992), in which the court stated that ineffective assistance of counsel is generally not a ground for relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401(West 1990)), but there may be instances where the rule should be relaxed, such as for the protection of a minor's interest. Although this case does not involve section 2-1401, Constantin analogizes the principle to this situation as an instance where justice and fairness require relief. He also maintains that the trial court had a duty to ensure that the children's rights were adequately protected. See *In re Marriage of Adams*, 133 Ill. 2d 437, 445 (1990); *Muscarello v. Peterson*, 20 Ill. 2d 548, 555 (1960). Constantin cites several cases where trial court rulings were reversed because the interests of minors were at stake. See *In re Marriage of A'Hearn*, 408 Ill. App. 3d 1091, 1100 (2011) (trial court barred father's witnesses for petition to modify custody); *Brandon v. DeBusk*, 85 Ill. App. 3d 645, 648 (1980) (trial court denied motion to vacate); *Allen v. Yancy*, 57 Ill. App. 2d 50, 61 (1965) (because the plaintiff was a minor, the trial court should have taken notice of any legitimate and substantial errors even if they were not object to at trial).

¶ 51    Constantin argues that the trial court was aware through many prior hearings of the difference between his and Monica's financial circumstances, including their differing abilities to provide the children with vacations. Constantin points out that the trial court awarded him a contribution towards his appellate fees, which required a finding of his inability to pay those fees and Monica's ability to pay them. Constantin argues that either evidence of the children's increased needs did not have to be established as a matter of law, or the trial court should have reopened proofs so that Constantin could testify to them.

¶ 52    Monica responds that a showing of a substantial change in circumstances through her increased income was not enough to meet Constantin's burden of making a *prima facie* case on every element of his claim to modify child support, as after a trial court makes a finding of substantial change, it must then engage in an analysis under Marriage Act to determine the amount of child support. See 750 ILCS 5/510, 505(a) (West 2018); *In re Marriage of Pylawka*, 277 Ill. App. 3d at 731-32 ("After the threshold question of whether a substantial change in circumstances has occurred is answered, then and only then may the court determine the amount of the increase in child support.").

¶ 53    Monica argues that after the trial court found that there was a substantial change in circumstances based on her increased income, there was no need for it to analyze whether the children's needs had changed. Instead, what it needed to do was determine the amount of child support. She cites, among other cases, *In re Marriage of Heil*, 233 Ill. App. 3d 888, 890 (1992), where the court stated, "After the court finds a substantial change in circumstances under section 510(a), the same factors are considered in setting the amount of modified child support as were considered in determining the original amount under section 505." These factors include the financial resources and needs of the children and parents, the standard of living the children would

have enjoyed had the marriage not been dissolved, and the children's physical and emotional conditions and educational needs. See 730 ILCS 5/505(a)(2) (West 2018).

¶ 54     Monica further notes that the trial court may deviate from child support guidelines. See 730 ILCS 5/505(a)(2) (West 2018). Monica points out that the evidence established that the parties' combined incomes put them beyond the highest level of the guideline basic child support obligation schedules. See 730 ILCS 5/505(a)(3.2) (West 2018). She argues that the trial court therefore had to deviate from the guidelines and look at the factors under section 505(a). According to Monica, in granting her motion for a directed finding, the trial court found that Constantin failed to present evidence on the relevant statutory factors to allow it to set a child support figure.

¶ 55     Monica cites *Fedun v. Kuczek*, 155 Ill. App. 3d 798, 801 (1987), as a case in which the trial court heard testimony regarding changed circumstances, beyond the parties' incomes. She also cites, among other cases, *In re Marriage of Verhines & Hickey*, 2018 IL App 2d 171034, ¶ 80 (in making a substantial change determination, the trial court erred in considering just the payor's change in employment status and reduced income); *Hines v. Hines*, 236 Ill. App. 3d 739 (1992) ("[T]he burden was on defendant to sustain his motion for reduction, and inherent in the determination of the change is the consideration of the relevant factors as set forth in section 505(a)(2) of the Act. The defendant, in seeking modification, cannot escape the court's consideration of these factors by plaintiff's failure to come forth with evidence"); and *In re Marriage of Morrisroe*, 155 Ill. App. 3d 765, 771-72 (1987) ("without sufficient evidence that the needs of the minor children have increased, modification of child support is not warranted here"). Monica argues that Constantin failed to demonstrate a *prima facie* case for the modification of child support because he provided no evidence whatsoever beyond the parties' incomes.

¶ 56    Monica next argues that Constantin forfeited his argument that the trial court erred in denying his motion to reopen proofs because he failed to provide an offer of proof as to what evidence he would have offered. See *People v. Andrews*, 146 Ill. 2d 413, 420-21 (1992); *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 47; *People v. Collier*, 329 Ill. App. 3d 744, 752 (2002).

¶ 57    Monica argues that even absent forfeiture, Constantin did not provide the trial court with a reasonable excuse for failing to introduce the evidence at trial. See *In re Marriage of Suarez*, 148 Ill. App. 3d at 858 (in deciding whether to grant a motion to reopen proofs, the trial court should consider whether the party has an excuse for failing to introduce the evidence at trial, whether the adverse party will be surprised or unfairly prejudiced, and "whether there are the most cogent reasons to deny the motion."). Monica maintains that inadvertence and a misunderstanding of the law are not sufficient bases to allow Constantin to benefit in this appeal from his failure to introduce sufficient evidence at the hearing. Monica argues that Constantin made a calculated risk in choosing to focus on only one factor for the trial court's determination, and his strategy backfired.

¶ 58    Finally, Monica argues that there is no basis to believe that the trial court failed to protect the children. She contends that given Constantin's failure to identify any of their increased needs in his petition to modify child support or during the hearing, there was no reason for the trial court to have any legitimate concern that their needs were not being met. She maintains that this is especially true because Constantin implicitly acknowledged that a reservation of child support was appropriate as of March 21, 2019, when the trial court re-calculated maintenance and re-affirmed and set certain terms for contribution to the children's expenses. Monica argues that it strains credulity to believe that the children would be economically disadvantaged without child support

when their lowest income-earning parent makes almost $130,000, without including the receipt of maintenance. Monica argues that although the trial court awarded Constantin some appellate attorney fees, the evidence received at that hearing showed that he received over $1 million in assets as part of the dissolution judgment, and that he had taken many trips within the United States and overseas in the two years after the judgment. She argues that the standards for awarding attorney fees are different than the standards for modifying and setting child support, and that the award of fees did not equate to a finding that the children would not be protected if Constantin is not given the opportunity to present evidence at to their needs.

¶ 59    Constantin responds that the statutory guidelines establish a rebuttable presumption for the appropriate amount of child support, and the trial court can then deviate from the guidelines after considering the bests interests of the children and evidence showing the relevant factors. He argues that for higher incomes, the basic child support obligation is not to be less than the percentage for the highest level of combined net incomes set forth in the schedule. See 750 ILCS 5/505(a)(3.5) (West 2018). Constantin argues that, therefore, if the trial court did not want to allow other evidence or Monica did not want to present additional evidence, the trial court should have ordered guideline support based on the highest income level. He asserts that considering Monica's income, a $0 child support award is absurd and improper. Constantin argues that the cases cited by Monica are distinguishable for various reasons, including that they did not involve directed findings. As far as reopening proof, he argues that his attorney did say that he would testify about how he was unable to provide for the children and how their needs had increased in the last two years. Constantin maintains that if he somehow forfeited the argument, the court may still choose to address the issue. See *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 202 (2007) (the doctrine of forfeiture is a limitation on the parties and not on the court). Finally,

Constantin argues that the vast majority of the assets he received in the dissolution judgment were retirement assets, which was a fact the trial court recognized when it awarded him attorney fees.

¶ 60   Applying *de novo* review, we conclude that the trial court erred in granting Monica's motion for a directed finding. The trial court ruled that although "there was definitely a change of circumstances by the evidence that [Monica was] basically earning double what she was earning at the time of the judgment," and that Constantin had provided evidence of the parties' resources, it still "did not receive sufficient evidence upon which to determine whether or not a duty of support exists" because Constantin failed to provide evidence of the remaining factors under section 505(2). We agree with the finding that Constantin had proven a substantial change in circumstances by showing that Monica's income had increased significantly. *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 29. We also agree with Constantin's argument that there is a presumption that a child's needs increase as they grow older and the cost of living rises. See *In re Marriage of Adams*, 348 Ill. App. 3d 340, 343 (2004); *In re Marriage of Pylawka*, 277 Ill. App. 3d at 731. Accordingly, the trial court was incorrect in stating that it did not receive sufficient evidence to determine whether a duty of support existed in the first place.

¶ 61   Monica largely does not contest these points (see *supra* ¶¶ 52-53), instead arguing that the trial court could not determine an *amount* of child support without evidence pertaining to the factors under section 505. However, section 505(a)(3.3) of the Marriage Act (750 ILCS 5/505(a)(3.3) (West 2018)) states: "There is a rebuttable presumption in any judicial or administrative proceeding for child support that the amount of the child support obligation that would result from the application of the child support guidelines is the correct amount of child support." A party must present compelling reasons to overcome the presumption that the guidelines must be applied, with the burden on the party seeking a deviation from the guidelines.

*In re Tate Oliver B*., 2016 IL App (2d) 151136, ¶ 44. Monica herself cites section 505(a)(3.2), which states:

"A court may use its discretion to determine child support if the combined adjusted net income of the parties exceeds the highest level of the schedule of basic child support obligation, *except that the basic child support obligation shall not be less than the highest level of combined net income set forth in the schedule of basic child support obligation*." (Emphasis added.) 730 ILCS 5/505(a)(3.2) (West 2018).

It is undisputed that the parties' combined net income exceeds the highest level of guideline child support obligation schedules. See IL Department of Healthcare & Family Services, *Income Shares Schedule Based on Net Income*, *available at* https://www.illinois.gov/hfs/SiteColl ectionDocuments/IncomeSharesScheduleBasedonNetIncome.pdf (last visited July 14, 2020). The schedule lists the highest combined net monthly income bracket as $29,975 to $30,024.99, and sets a support obligation for two children of $3,289 per month for this bracket. *Id.*

¶ 62     In other words, there was a rebuttable presumption that the guideline child support obligation was appropriate. 750 ILCS 5/505(a)(3.3) (West 2018). The parties' combined net income exceeded the highest level set fort in the child support obligation schedule, such that the basic child support amount should have presumed to have been not less than $3,289 per month. See 730 ILCS 5/505(a)(3.2) (West 2018); IL Department of Healthcare & Family Services, *Income Shares Schedule Based on Net Income*, *available at* https://www.illinois.gov/hfs/SiteColl ectionDocuments/IncomeSharesScheduleBasedonNetIncome.pdf (last visited July 14, 2020). If Monica believed that the guideline amount was too high, she had the burden to present compelling reasons to deviate from the guidelines (*In re Tate Oliver B*., 2016 IL App (2d) 151136, ¶ 44), which she could have presented during her case-in-chief. There was, therefore, a basic child

support amount that the trial court could have awarded based on the rebuttable presumptions present here, meaning that Monica's argument that it had insufficient information to set a child support amount fails, and the trial court erred in granting her motion for a directed finding. The cases that Monica cites do not change our analysis, as many of them pre-date the current child support statute, and the remainder do not involve a directed finding, section 505(a)(3.2), and a situation in which the parent was currently receiving no child support.

¶ 63                          III. CONCLUSION

¶ 64    For the reasons stated, we affirm the Du Page County circuit court's grant of Monica's motion for summary judgment on Constantin's petition to modify maintenance, but we reverse its ruling granting Monica a directed finding on Constantin's petition to modify child support, and we remand for further proceedings.

¶ 65    Affirmed in part and reversed in part.

¶ 66    Cause remanded.